CITY OF CAMBRIDGE *vs.* JOHN C. DOW COMPANY.

Middlesex.    December 15, 1903. — April 4, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & BRALEY, JJ.

*Equity Jurisdiction.    Nuisance.*

The Supreme Judicial Court has no jurisdiction to entertain a bill in equity, to re-. strain a corporation from carrying on without a license the business of melting and rendering grease and tallow and making food for fowls from oysters and other sea shells, in a building where the business was established before May 8, 1871, the defendant never having killed horses or done any rendering of horses or other dead animals, and never having used or required in its business trucks or wagons for the removal of dead animals. Such a case is exempted from the provisions of R. L. c. 75, § 108; and *semble*, that § 111 of the same chapter does not apply to it, but,·if it does, it provides only for fine or imprisonment and gives no remedy in equity.

BILL IN EQUITY, filed in the Supreme Judicial Court on June 18, 1903, by the city of Cambridge, to restrain the defendant from carrying on the business of melting and rendering at its factory at 22 Portland Street in that city.

The case came on to be heard before *Morton*, J., who, by

agreement of the parties, reserved it upon the bill and answer for determination by the full court, such orders and decrees to be entered as to the court should seem just and fit.

*G. A. A. Pevey*, for the plaintiff.

*G. L. Mayberry*, for the defendant.

LATHROP, J.    This is a bill in equity in which the plaintiff seeks to have the defendant restrained by injunction from carrying on the business of melting and rendering on certain land in Cambridge.    The case comes before us on the bill and answer. From these it appears that when the bill was filed, the defendant was carrying on, and had carried on continuously since 1860, in Cambridge, without a license, the business of melting and rendering of grease and tallow, and making food for fowls from oyster and other sea shells; but that the defendant never killed horses, and never did any rendering of horses or other dead animals, and never had used or required in its business trucks or wagons for the removal of dead animals.    There was a board of health in Cambridge.

The principal question is whether the court has original jurisdiction in the matter.    The court undoubtedly has jurisdiction to restrain a nuisance, but there is nothing in this bill to show that the trade carried on by the defendant is a nuisance, or that the board of health, under the powers given it by law, has passed any general or special order applicable to the case, and the R. L. c. 75, § 141, do not apply.    The court also has power, aside from its general jurisdiction, when such power is given it by statute.

The plaintiff refers in its brief to the R. L. c. 75, §§ 73, 110, but these sections confer jurisdiction upon the Superior Court, and have no reference to this court.    Nor is there anything in the R. L. c. 159, §§ 1, 2, which affects this case.    Section 1 of this chapter gives to both courts " original and concurrent jurisdiction in equity of all cases and matters of equity which are cognizable under the general principles of equity jurisprudence." Section 2 gives to the Supreme Judicial Court " original and exclusive jurisdiction in equity of all cases and matters of equity which are cognizable under the provisions of any statute and are not within the jurisdiction conferred by the provisions of the preceding section, unless a different provision is made; and the

Superior Court shall have like original and exclusive, or like original and concurrent, jurisdiction only if the statute so provides."

The case presented by the bill might come within the R. L. c. 75, § 108, and the jurisdiction would be in the Superior Court, under § 110, but for the provision in § 108, that "the provisions of this section shall not apply to any building or premises which were occupied or used for said trades or occupations" on May 8, 1871.

The plaintiff further contends that the case comes within the R. L. c. 75, § 111, and that § 108 relates to places and § 111 to persons. But § 108 applies to persons as much as § 111. By its terms, "Whoever occupies or uses a building for carrying on therein the business of slaughtering cattle, sheep or other animals, or for a melting or rendering establishment," etc. without first obtaining permission of certain boards named, shall pay a certain penalty. Then follows the provision already cited as to buildings.

Section 111 is taken from the St. of 1901, c. 134, which began as follows: "Any person, firm or corporation engaged or desiring to engage in the business of killing horses, or in the rendering of horses or other animals, shall . . . make application to the board of health of the city or town where the business is to be conducted, for a license to carry it on." The language of the first part of this section was changed by the joint special committee on the consolidating and arranging of the Public Statutes so as to read: "A person, partnership or corporation engaged in or desiring to engage in the business of killing horses, or in the carrying on of a melting or rendering establishment" etc., and in this form the Legislature enacted the law. It may well be doubted, however, whether any change in the law was contemplated either by the committee or the Legislature, or whether any change was in fact made. The rest of the section, which retains the language of the St. of 1901, shows that the section has no application to an establishment such as the defendant was carrying on, but was intended to apply to a melting and rendering establishment used in connection with dead horses or other large animals. Thus before granting a license, the board of health must be "satisfied that the applicants have a suitable

building and plant in a situation approved by said board and that they have suitable trucks or wagons for the removal of dead animals." The board of health is also required to notify the board of cattle commissioners of the granting of any such license. The licensees are required to report to the board of cattle commissioners every animal received by them which is found to be infected with a contagious disease. There is also this further provision : " No unlicensed person shall carry on the business of killing horses or of melting and rendering." It seems to us reasonably clear that " melting and rendering " refers to horses or other large animals whose bodies are received before they are dismembered, and that other kinds of melting and rendering were supposed to be covered by § 108. However this may be, the remedy provided for a violation of the section is a fine or imprisonment, and nothing is said as to any other judicial remedy.

As the plaintiff has not brought the case within the general equity jurisdiction of the court or within any statute giving this court jurisdiction, the order must be

*Bill dismissed.*